```
                  IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF KANSAS


BERNIECE E. MURPHY,                )
                                   )
               Plaintiff,          )
                                   )   CIVIL ACTION
v.                                 )
                                   )   No. 05-2297-JWL-JTR
                                   )
JO ANNE B. BARNHART,               )
Commissioner of Social Security,   )
                                   )
               Defendant.          )
_____)
```

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). The matter has been referred to this court for a report and recommendation. The court recommends the Commissioner's decision be AFFIRMED.

**I.  Introduction**

Plaintiff applied for disability insurance benefits and supplemental security income in 1998, and again in 1999.  (R.

16).  Those applications were denied, and plaintiff failed to exhaust administrative remedies with respect to them.  Id.  On April 9, 2002 plaintiff again applied for disability insurance benefits and supplemental security income.  (R. 16, 85-87, 222-24).  Those applications were denied initially and upon reconsideration, and plaintiff sought and was given a hearing before an Administrative Law Judge (ALJ).  (R. 16, 50-53, 71, 78-83).  At the hearing on Sept. 13, 2004 plaintiff appeared and testified and was represented by a non-attorney representative.[1]  (R. 16, 22, 24, 61).  Testimony was also received from a vocational expert.  (R. 22, 23).

On Apr. 28, 2005, the ALJ issued a decision in which he found plaintiff is not disabled within the meaning of the Act and denied her applications.  (R. 16-21).  The ALJ found plaintiff has a low back disorder which is severe within the meaning of the Act, but does not meet or equal the severity of a listing in the Listing of Impairments.  (R. 17).  He found plaintiff's allegations of symptoms producing disabling limitations "no more than partially credible," (R. 18-19, 20, finding no. 4) and determined plaintiff has the residual functional capacity (RFC) for a range of light work.  (R. 19,

---

[1] The decision states plaintiff was represented by an attorney-at-law, but the record reveals the representative is not an attorney.  Compare (R. 16); with (R. 22, 24, 61).

20, finding no. 5). The ALJ found plaintiff is unable to perform her past relevant work, but is able to perform other work existing in significant numbers in the economy, such as jobs as a bench assembler, a gate guard, or a toll collector. (R. 19-20). Therefore, he concluded plaintiff is not disabled within the meaning of the Act, and denied her applications. (R. 21).

Plaintiff requested review of the ALJ's decision and was denied by the Appeals Council. (R. 7-12). Therefore, the ALJ decision is the final decision of the Commissioner. (R. 7); Threet v. Barnhart, 353 F.3d 1185, 1187 (10th Cir. 2003). Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act. 42 U.S.C. § 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion.

Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency." White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)). The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d). The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy. Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2005); Allen v. Barnhart, 357 F.3d 1140,

1142 (10th Cir. 2004); Ray, 865 F.2d at 224. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. Before evaluating step four, the Commissioner assesses claimant's RFC. 20 C.F.R. § 416.920. This assessment is used at both step four and step five of the process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show other jobs

in the national economy within plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ's credibility finding is not supported by substantial evidence and that the hypothetical questioning of the vocational expert is erroneous because it does not include all of plaintiff limitations regarding sitting, standing, and lifting.  Plaintiff seeks reversal and award of benefits without remand for a rehearing.  The Commissioner argues that the ALJ properly evaluated the credibility of plaintiff's allegations and that substantial evidence supports his determination.  She argues that substantial evidence supports the ALJ's RFC assessment and the hypothetical questioning based upon that assessment was proper although it did not include all of plaintiff's alleged limitations.  The court agrees with the Commissioner and addresses the issues in the order presented in plaintiff's brief.

**III.     Credibility Evaluation**

An ALJ's credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).  "Credibility determinations are peculiarly the province of the finder of fact."  Diaz v. Sec'y of Health & Human Serv., 898 F.2d 774, 777 (10th Cir. 1990).  Therefore,

in reviewing the ALJ's credibility determinations, the court will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."  Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 801 (10th Cir. 1991).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).

> The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.  Musgrave v. Sullivan, 966 F.2d 1371, 1375-76 (10th Cir. 1992) (citing Luna, 834 F.2d at 163-64).

Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).

In evaluating symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (regulatory factors).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are

-7-

>peculiarly within the judgment of the ALJ, the
>motivation of and relationship between the claimant
>and other witnesses, and the consistency or
>compatibility of nonmedical testimony with objective
>medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting

Thompson, 987 F.2d at 1489. As plaintiff argues,

>"expanding the decision maker's inquiry beyond
>objective medical evidence does not result in a pure
>credibility determination.  The decision maker has a
>good deal more than the appearance of the claimant
>to use in determining whether the claimant's pain is
>so severe as to be disabling."

(Pl. Br., 15) (quoting Luna, 834 F.2d at 166).

### A. **The ALJ's Credibility Analysis**

The court discerns eight reasons given in the decision to find plaintiff's allegations "no more than partially credible." (R. 20, 18-19). (1) One month after surgery, in May 1998, plaintiff's treating physician opined plaintiff could return to regular duties. (2) Plaintiff's treating physician opined plaintiff was very unmotivated to return to work or seek other employment. (3) The consultative examination's findings of mild to moderate difficulties with orthopedic maneuvers but full range of motion in both knees and right knee x-rays within normal limits detracts from the credibility of plaintiff's testimony regarding knee pain. (4) Medical records from the Kansas University Medical Center (KUMC) reveal plaintiff's back pain is essentially controlled

with medication.  (5) Plaintiff admits to having no adverse side-effects from medication.  (6) Although plaintiff reports inability to afford needed treatment, no physician has identified any additional treatment needed beyond exercise. (7) Recommendations for physical therapy are inconsistent with plaintiff's testimony regarding a need to lie down.  And, (8) the record reveals plaintiff has received treatment, plaintiff has not demonstrated an inability to afford treatment as stated, and there is no evidence plaintiff has ever been refused treatment.  (R. 18-19).

In his credibility analysis, the ALJ also reported other medical findings:  Plaintiff underwent an MRI in July 1998, which revealed some residual pathology in plaintiff's low back but no recurrent disc herniation.  Lumbar x-rays in Jan. 2003 revealed moderate degenerative disc disease and degenerative arthritis in the spine.  The consultative examination in Feb. 2003 revealed no muscle wasting, no edema, good range of motion of spine and knees without paraspinous muscle spasm, straight leg raising negative to ninety degrees bilaterally, no significant neurological limitations except mild to moderate difficulties with orthopedic maneuvers, and diminished reflexes in the lower extremities but with no assymetrical reflex, sensory, or motor deficits.  (R. 18-19).

The additional medical findings reported were not specifically stated as additional reasons for finding plaintiff's allegations incredible, but constitute general facts supporting the credibility determination.

### B.  Arguments

Plaintiff claims the ALJ erred in his credibility determination by relying on portions of an x-ray report from Jan. 2003 while ignoring other portions of that report, by relying on the Feb. 2003 report of a consultative examiner while ignoring "a report from a treating physician only one day prior to the consultative examination," (Pl. Br., 16) and by mischaracterizing medical records to find plaintiff's pain is essentially controlled by medication.  (Pl. Br., 15-16). The Commissioner cites record evidence tending to support a finding that plaintiff's allegations are not credible and cites evidence tending to show that plaintiff's pain was controlled with medication, but does not address plaintiff's claims that the ALJ ignored certain evidence contrary to his credibility determination.

### C.  Analysis

First, the court finds that substantial evidence in the record supports the ALJ's finding "that medical records from the Kansas University Medical Center relayed that claimant's

back pain is essentially controlled by medication." (R. 19). As plaintiff argues, every KUMC "Office visit form" reveals chronic back pain in spite of medication, and shows an assessment of "back pain," "low back pain," or "chronic back pain." (R. 171-72, 176-82, 190-91, 193-95). That is not inconsistent, however, with the ALJ's finding that the records reveal the pain is controlled by medication.

The first record, dated Dec. 11, 2002 reveals plaintiff "takes over the counter meds with some relief." (R. 177). The physician prescribed Naprosyn for the pain. <u>Id.</u> On Jan. 2, 2003, it was reported the pain decreased in severity. (R. 176). On May 28, 2003, plaintiff reported the pain was persistent and changes in weather caused pain, but the pain had decreased. (R. 195). On Jun. 25, 2003 plaintiff reported she could not afford her medication, so she was given samples of Bextra. (R. 194). On Aug. 14, 2003 plaintiff's medication was changed because medicaid would not pay for the Bextra. (R. 191). On Oct. 6, 2003, plaintiff reported "she is doing well on current med it hurts her only when it gets very cold." (R. 190). On Mar. 5, 2004, plaintiff reported her back pain was "still only exacerbating $\overline{c}$ changes in weather. Pt. usually doubles up on Bextra." (R. 180). The May 5, 2004 record notes "Back Pain - stable, change in weather

exacerbates the pain. On Bextra." (R. 179). On Aug. 5, 2004 it is recorded "Pt. c̄ chronic LBP, doing well c̄ Bextra." (R. 178).

A fair reading of the treatment notes supports a finding that plaintiff has chronic low back pain for which she is taking Bextra. As noted above, she is doing well on the medication which controls the pain except for exacerbations caused by changes in the weather, and when the weather changes she doubles up on her medication to control the pain. This record supports the ALJ's finding that plaintiff's pain is controlled by medication.

The Jan. 2003 x-ray report about which plaintiff argues was characterized by the ALJ as revealing "moderate degenerative disc disease and some degenerative arthritis in the lumbar spine." (R. 18); (R. 174-75). The report contains the follow findings:

> There is no fracture identified. There is very
> slight retrolisthesis of L3 on L4. There is
> moderately diffuse degenerative disc disease with
> narrowing of the intervertebral disc spaces from L2
> through L5, most marked at the L2-3 level. There
> are anterior osteophytes and vacuum disc phenomenon
> at the L2-3 level. Smaller anterior osteophytes are
> seen off the end plates at the remaining lumbar
> levels. There is no spondylolysis or
> spondylolisthesis. There are end plate depressions
> at all visualized spinal levels, which can be seen
> with sickle cell anemia. Clinical correlation is
> recommended. The paraspinous and prevertebral soft

>  tissues are unremarkable.  There is no evidence of
>  neural foramen encroachment.

(R. 174).  Absent citation to some medical authority or medical expert, neither the ALJ, this court, nor plaintiff's counsel is qualified to determine specifically what these findings mean, or what parts are of any particular significance.  However, there is additional evidence in the record which tends to explain the findings.  First, the report contains a summary of the "IMPRESSION:" drawn from the x-rays.

>  1.  NO ACUTE FRACTURES ARE IDENTIFIED.  VERY MILD
>  RETROLISTHESIS OF L3 ON L4.  MODERATE DEGENERATIVE
>  DISC DISEASE, AS DESCRIBED.
>
>  2.  END PLATE DEPRESSION AT ALL VERTEBRAL LEVELS.
>  THESE FINDINGS CAN BE NOTED WITH SICKLE CELL ANEMIA
>  AND CLINICAL CORRELATION IS REQUESTED.

(R. 175).  The record reveals a sickle cell screen was done on plaintiff which was negative.  (R. 173).  Sickle cell anemia was ruled out, and finding #2 reveals that the references to end plate depression are only significant to require an evaluation whether plaintiff has sickle cell anemia. Therefore, it was appropriate for the ALJ to ignore the references to end plate depressions and sickle cell anemia in his summary of the x-ray report.  Moreover, although the ALJ did not include discussion of "narrowing of the intervertebral disc spaces, anterior osteophytes, and vacuum disc phenomenon" in his summary, his failure to discuss such details is

-13-

appropriate because mention of such details is not made in the "IMPRESSION:" section of the report.

Plaintiff points to no evidence and cites to no authority for the proposition that "narrowing of the intervertebral disc spaces, anterior osteophytes, and vacuum disc phenomenon" are such findings as to give support to plaintiff's allegations of disabling symptoms beyond the fact that the report reveals "moderate degenerative disc disease and some degenerative arthritis in the lumbar spine" as found by the ALJ.  The court finds no error in the ALJ's characterization of the x-ray report and his failure to specifically mention "narrowing of the intervertebral disc spaces, anterior osteophytes, vacuum disc phenomenon, and end plate depressions."

Plaintiff's final claim of error in the credibility determination is that the ALJ referred to the report of a consultative examination performed on Feb. 8, 2003 which is of "suspect reliability," but failed to mention the report of a treating physician one day earlier in which the physician noted "back - pain elicited on leg raising," and moderate tenderness to palpation in the lower back, and ordered hydrocodone for the pain.  (R. 172).  Plaintiff's argument misses the point.  The "Office visit form" completed on Feb. 7, 2003 is not contrary to the report of examination completed

-14-

by Dr. Motoc on Feb. 8, 2003.  Although the office visit form notes back pain elicited on leg raising and the consultative report notes straight leg raising is ninety degrees bilaterally, there is no indication the office visit is referring to a straight leg test.  Moreover, the consultative report acknowledges that plaintiff reported back pain, that tender points were noted at the upper gluteal area, and that "bilateral sacroiliac tenderness is noted." (R. 166).  The consultative report also recognized that plaintiff was taking naproxen and hydrocodone.  (R. 165).  There is no conflict in the two reports.  The ALJ relied upon the consultative report primarily to show the benign nature of its findings (no significant limitations, full range of motion, only mild to moderate difficulties with orthopedic maneuvers, etc.) and that the report was inconsistent with plaintiff's claims of significant knee pain.  Moreover, the decision makes clear that the ALJ considered the KUMC treatment notes in his evaluation of the evidence.  The court finds no error in the ALJ's failure to specifically mention the treatment note dated Feb. 7, 2003.

**IV. Remaining Claims**

Plaintiff's remaining claims (that the hypothetical questioning did not include limitations on sitting, standing,

and lifting; and that she is capable only of sedentary exertion) are predicated upon crediting her testimony. (Pl. Br., 16-17). Because the ALJ properly discounted plaintiff's testimony, he need not credit that testimony. Therefore, the court finds no error in the hypothetical questioning or in the failure to apply the Medical-Vocational Guidelines rule 201.10. Having found no error as alleged by plaintiff, the court may not remand the case for an immediate award of benefits.

**IT IS THEREFORE RECOMMENDED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated May 31, 2006, at Wichita, Kansas.

    s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**