IN THE UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

**BERNICE E. MURPHY,**

        **Plaintiff,**

v.                                                                         **Case No.  05-2297-JWL**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## MEMORANDUM & ORDER

Plaintiff Bernice Murphy brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of defendant, the Commissioner of Social Security, to deny her application for disability insurance benefits under Title II of the Social Security Act.  The court referred this matter to a Magistrate Judge, who issued a Report and Recommendation to affirm the decision of the Administrative Law Judge ("ALJ"), who earlier had affirmed the Commissioner's decision to deny benefits to Ms. Murphy.

The plaintiff, through counsel, then submitted two objections to the Magistrate Judge's Report and Recommendation, arguing that the Magistrate Judge improperly analyzed the ALJ's credibility assessment of Ms. Murphy.  As explained below, however, the court disagrees with the objections raised.  As a result, the court will adopt the recommendation of the Magistrate Judge and, ultimately, affirm the decision of the Commissioner to deny benefits to Ms. Murphy.

## I.     PROCEDURAL BACKGROUND

Plaintiff first filed for disability insurance benefits and supplemental security income in 1998, and she filed again in 1999. Both of her claims were denied, and Ms. Murphy did not perfect an appeal on either filing. On May 9, 2002, Ms. Murphy filed another application for disability insurance benefits and supplemental security income. She alleged an onset of disability on February 2, 2002. Her application was denied both initially and upon reconsideration, and at plaintiff's request, an administrative law judge ("ALJ") held a hearing on September 13, 2004, to explore the matter. Appearing with a non-attorney representative, plaintiff testified that she suffered back pain and knee pain. In addition, a vocational expert testified at the hearing.

On April 28, 2005, the ALJ issued his written decision. He found that although Ms. Murphy has a lower back disorder, her lower back impairment does not meet the severity of a listing in the Listing of Impairments. For numerous articulated reasons, he deemed Ms. Murphy's allegations of pain and impairment "no more than partially" credible. Ultimately, he affirmed the Commissioner's denial of benefits to Ms. Murphy. "The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003); *see also* 20 C.F.R. § 404.1520 (explaining this five-step process). In this case, the ALJ determined at step five that Ms. Murphy was not disabled. At step five, the Commissioner has the burden to show that a claimant retains the functional capacity to do other work that exists in the regional and national economies. *See Oslin v. Barnhart*, 2003 WL 21666675 n.1 (10th Cir. 2003) (citing *Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001)). Thus, although in this case the ALJ found that Ms. Murphy suffered from a lower back

impairment and could not return to her past work, the ALJ found that Ms. Murphy "at all times retained the residual functional capacity for a range of light work where she could lift and carry up to 20 pounds maximum occasionally with 10 pounds frequently." As a result, he found that she retained the ability to perform a significant number of jobs that exist in the regional and national economies; specifically, that she could work as a bench assembler, a gate guard, or a toll collector. In sum, the ALJ concluded that Ms. Murphy was not disabled within the meaning of the Social Security Act.

After receiving the ALJ's unfavorable decision, Ms. Murphy requested review by the Appeals Council, which denied review. As a result of that denial, the ALJ's decision became the final decision of the Commissioner. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003). Upon Ms. Murphy's petition for judicial review of that decision, this court referred the matter to a Magistrate Judge, who issued a Report and Recommendation advising the court that the Commissioner's denial of benefits be affirmed based on substantial evidence in the record. Ms. Murphy has filed two objections to that Report and Recommendation, and the matter is now ripe for this court's review.

## II.   STANDARD OF REVIEW OF THE COMMISSIONER'S DENIAL OF BENEFITS

This court has limited review of the Commissioner's determination that Ms. Murphy is not disabled within the meaning of the Social Security Act. *Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1497 (10th Cir. 1992). The court examines whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the Commissioner applied the correct legal standards. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*

*v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quotation omitted); *Hamlin*, 365 F.3d at 1214 (same). The court neither reweighs the evidence nor substitutes its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Grounds for reversal exist if the agency fails to apply the correct legal standards or fails to demonstrate reliance on the correct legal standards. *Hamlin*, 365 F.3d at 1114.

As previewed earlier, "[t]he Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled." *Doyal*, 331 F.3d at 760. This five-step analysis evaluates whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant suffers from a severe impairment or combination of impairments; (3) the impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation; and (4) the claimant possesses the residual functional capacity to perform his or her past work or (5) other work in the national economy. *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof through step four, and, if the claimant meets this burden, then the burden shifts to the Commissioner at step five. *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005).

**III.   ANALYSIS OF THE OBJECTION TO THE REPORT AND RECOMMENDATION**

**A.   Standard of Review of the Report and Recommendation**

The court reviews de novo those portions of the Magistrate Judge's Report and Recommendation to which a written objection has been made. Fed.R.Civ.P. 72(b). As the Magistrate Judge explicitly advised the parties in the conclusion of his Report and Recommendation, those portions to which neither party objects are deemed admitted, and failure to object constitutes a waiver of any right to appeal. *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1114 (10th Cir. 2004); *see also Johnson v. Barnhart*, 402 F. Supp. 2d 1280, 1282 (D. Kan. 2005) ("Those parts of the report and recommendation to which there has been no objection are taken as true and judged on the applicable law.").

In addition, a district court is afforded considerable discretion in determining what reliance it may place upon the magistrate judge's findings and recommendations. *See Andrews v. Deland*, 943 F.2d 1162, 1170 (10th Cir. 1991) (citing *United States v. Raddatz*, 447 U.S. 667 (1980)); *Johnson*, 402 F. Supp. 2d at 1282 ("The district court has considerable judicial discretion in choosing what reliance to place on the magistrate judge's findings and recommendations."). Upon receipt of a magistrate judge's report and recommendation, a district court may accept, reject, or modify the magistrate judge's disposition. 28 U.S.C. § 636(b)(1) (1994); Fed.R.Civ.P. 72(b); *Johnson*, 402 F. Supp. 2d at 1282.

**B.   The Magistrate Judge's Report and Recommendation**

The two objections lodged against the Magistrate Judge's findings both center on the credibility assessment of Ms. Murphy by the ALJ. In his Report and Recommendation, the Magistrate Judge focused on the allegations raised in Ms. Murphy's petition for judicial review. The Magistrate Judge presented in detail the factual background and the ALJ's decision, and the

court will not repeat that discussion here.

As the Magistrate Judge explained, the ALJ made a finding that Ms. Murphy's "testimony as to the severity of her impairment and attending symptoms is found to be no more than partially credible. . . ." In summarizing the ALJ's report, the Magistrate Judge listed eight reasons given by the ALJ for that finding: (1) one month after plaintiff had surgery, a treating physician opined that plaintiff could return to work; (2) a treating physician stated that plaintiff was very unmotivated to return to work or seek a different job; (3) the findings of a consultative examination contradicted plaintiff's testimony regarding knee pain; (4) medical records from plaintiff's examining physicians at Kansas University Medical Center (KUMC) demonstrate that plaintiff's back pain is largely alleviated with medication; (5) plaintiff admits having no adverse side-effects from such medication; (6) although plaintiff alleges that she cannot afford necessary treatment, the record does not show that any physician has identified any additional treatment beyond physical exercise; (7) recommendations for physical therapy are inconsistent with plaintiff's testimony regarding her alleged need to lie down and rest; and (8) the record shows that plaintiff has received treatment, plaintiff has not demonstrated any inability to afford treatment, and there is no evidence plaintiff ever has been refused treatment. The Magistrate Judge also detailed the numerous medical examinations of plaintiff. Because plaintiff's consulting physician and her treating physicians at KUMC all found that plaintiff's lower back pain and impairment was controlled by medication, the Magistrate Judge concluded that the ALJ's credibility findings were supported by substantial evidence in the record.

**C.     The Objections Raised by Ms. Murphy**

In response to the Magistrate Judge's Report and Recommendation, Ms. Murphy alleges that the Magistrate Judge erred in evaluating the ALJ's credibility assessment of Ms. Murphy. First, she argues that the Magistrate Judge improperly attempted to interpret an x-ray report from one of plaintiff's treating physicians. Second, she argues that the ALJ improperly rejected the opinion of a treating physician in favor of the opinion of a consulting physician who examined Ms. Murphy only one time. The court will address each of these objections in turn.

**1.      Standard of Review of an ALJ's Credibility Finding**

Plaintiff asserts that the ALJ committed error by disregarding plaintiff's subjective complaints about pain in her lower back. Under the decision in *Luna v. Bowen*, 834 F.2d 161 (10th Cir.1987), the ALJ must decide whether a claimant's subjective claims of pain are credible, considering factors such as a claimant's persistent attempts to find relief for pain and claimant's willingness to try any treatment prescribed; regular use of crutches or a cane; regular contact with a doctor; the claimant's daily activities; and the dosage, effectiveness, and side effects of medication. *Barnett v. Apfel*, 231 F.3d 687 (10th Cir. 2000) (citing *Luna*, 834 F.2d at 165-66). Moreover, the ALJ must give specific reasons why he or she rejects a claimant's subjective complaints of pain or impairment. *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).

The Tenth Circuit has "emphasized that credibility determinations are peculiarly the province of the finder of fact, and should not be upset if supported by substantial evidence." *Lopez v. Barnhart*, 2006 WL 1618511, at *4 (10th Cir. 2006) (citation omitted). "[T]he ALJ's credibility determinations are entitled to particular deference because, unlike appellate courts,

they have the ability to meet the claimants and assess their physical abilities 'in a direct and unmediated fashion.'" *Id.* (citation omitted); *see also Williams v. Bowen,* 844 F.2d 748, 755 (10th Cir. 1988) (explaining the numerous reasons for deferring to the ALJ's credibility determinations). Thus, because the ALJ is "'optimally positioned to observe and assess witness credibility,'" *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)), the court "may overturn such a credibility determination only when there is a conspicuous absence of credible evidence to support it." *Patterson v. Apfel*, 62 F. Supp. 2d 1212, 1217 (D. Kan. 1999) (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992)). Credibility determinations made by the ALJ are generally treated as binding. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).

**2.     First Objection: Alleged Improper Attempt to Interpret an X-Ray Report**

Ms. Murphy first argues that the Magistrate Judge erred by attempting to interpret a January 2003 x-ray report relating to plaintiff's lower back. The dispute centers on whether the ALJ ignored evidence in the x-ray report relating to "narrowing of the intervertebral disc spaces, anterior osteophytes, and vacuum disc phenomenon." Ms. Murphy points out that the Magistrate Judge in his Report and Recommendation initially states: "Absent citation to some medical authority or medical expert, neither the ALJ, this court, nor plaintiff's counsel is qualified to determine specifically what these findings mean, or what parts are of any particular significance." Following this statement, however, the Magistrate Judge then attempted to engage in a "medical" analysis of the x-ray report in order to show that the ALJ had not, in fact, ignored substantial evidence in the record. Based on this seeming self-contradiction, Ms. Murphy argues

8

that the Magistrate Judge improperly assessed the medical evidence.

The court acknowledges that any "medical" assessment of the x-ray report by the Magistrate Judge probably would be improper, particularly because the Magistrate Judge stated that it would be improper. But even if the court were to give full weight to the objection, plaintiff does not explain what impact this would have on the determination of whether substantial evidence supports the ALJ's decision. The court will simply disregard the Magistrate Judge's "medical" interpretation of the x-ray report; however, plaintiff's contention does not become meritorious merely because the Magistrate Judge may have included arguably irrelevant analysis.

Plaintiff does not address the remaining analysis relating to the x-ray report in the Report and Recommendation, which is fatal to plaintiff's objection. In essence, plaintiff attempts to point to a few medical terms from the x-ray report and claim that the absence of any discussion of these terms by the ALJ automatically entitles plaintiff to relief. Such an unfounded objection, however, is legally insignificant. As the Magistrate Judge concluded: "Plaintiff points to no evidence and cites to no authority for the proposition that 'narrowing of the intervertebral disc spaces, anterior osteophytes, and vacuum disc phenomenon' are such findings as to give support to plaintiff's allegations of disabling symptoms. . . ." As before, plaintiff once again fails to explain to the court why the presence of "narrowing of the intervertebral disc spaces, anterior osteophytes, and vacuum disc phenomenon" does anything to controvert the ALJ's ultimate finding that she is not disabled within the meaning of the Social Security Act. *Cf. Roberson v. Apfel*, 1998 WL 203090, at *2 (10th Cir. 1998) ("Although the record contains evidence that claimant had sustained injuries to his back and shoulder, none of the physicians opined that his condition was permanently

9

disabling."). Plaintiff's objection does not even address the significance of the ALJ's failure to discuss all of the evidence in the record, nor does plaintiff ever support her allegations with any medical or legal authority. Consequently, even if the court disregards the "medical" interpretation of the x-ray report by the Magistrate Judge, the court nevertheless finds that the ALJ's decision is based on substantial evidence. In the end, plaintiff simply does not substantiate her allegation that the x-ray report has any legal significance to the ultimate question of whether she is disabled under the Social Security Act.

### 3. Second Objection: Alleged Rejection of Treating Physician's Opinion

In Ms. Murphy's second objection to the Magistrate Judge's Report and Recommendation, she contends that the ALJ improperly discounted the opinion of a treating physician at KUMC and, instead, improperly relied on a consulting physician's opinion to find that she was not disabled. Plaintiff alleges in her brief to this court that one of her treating physicians at KUMC noted in February 2003 that she had "back pain on leg raising and moderate tenderness to palpation of the lower back. Plaintiff was also given Hydrocodone for her pain, a very strong pain reliever. The ALJ ignored the findings of this examination and instead only referred to the findings of a one time consultative examination performed one day later. The ALJ erred in rejecting the treating physician's opinion without making the appropriate findings." Plaintiff further alleges that the Magistrate Judge repeated the same error made by the ALJ.

Plaintiff is entirely correct that a treating physician's opinion ordinarily is entitled to significant weight, and such an opinion cannot easily be dismissed by an ALJ. The framework for the level of deference afforded to a treating physician's opinion is well-established. "Under the

10

'treating physician rule,' the Commissioner will generally give greater weight to the opinions of sources of information who have treated the claimant than of those who have not." *Hackett v. Barnhart*, 395 F.3d 1168, 1173-74 (10th Cir. 2005) (citing *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2)). "An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) 'well-supported by medically acceptable clinical and laboratory diagnostic techniques;' and (2) 'consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.'" *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). In addition, "the ALJ must 'give good reasons in [the] notice of determination or decision' for the weight he ultimately assigns the opinion.' 20 C.F.R. § 404.1527(d)(2). 'Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.'" *Branum*, 385 F.3d at 1275 (quoting *Watkins*, 350 F.3d at 1301).

Despite this standard, there is fundamental gap in plaintiff's objection: she does not establish that the ALJ did, in fact, reject the treating physician's opinion. In other words, the ALJ's duty as outlined above is only triggered if the ALJ rejects the treating physician's opinion, and plaintiff never even addresses the prior, fundamental question of whether the ALJ rejected that opinion. The record does not seem to indicate that the ALJ rejected the treating physician's February 2003 opinion. To the contrary, the ALJ specifically noted that "the medical records from Kansas University Medical Center relayed that claimant's back pain is essentially controlled by medications. This does not support a disabling severity of symptoms." He further observed that

11

plaintiff "admits that she has not had any adverse side effects from medications . . . ." Thus, "[s]ubstantial evidence supports the ALJ's determination that the claimant's ability to work was not limited by any significant side effects of the medication." *Godfrey v. Apfel*, 77 F. Supp. 2d 1178, 1188 (D. Kan. 1999).

In addition, plaintiff never explains why the Magistrate Judge improperly evaluated the ALJ's findings concerning the alleged conflict between the opinions of the treating physicians and the consulting physician. For the numerous reasons articulated by the Magistrate Judge, there is no indication that the treating physician's report from February 7, 2003, is contrary to the consulting physician's report from February 8, 2003. As the Magistrate Judge opined: "The consultative report also recognized that plaintiff was taking naproxen and hyrdocodone. There is no conflict in the two reports. The ALJ relied upon the consultative report primarily to show the benign nature of the findings . . . and that the report was inconsistent with plaintiff's claims of significant knee pain. Moreover, the decision makes clear that the ALJ considered the KUMC treatment notes in his evaluation of the evidence. The court finds no error in the ALJ's failure to specifically mention the treatment note dated Feb. 7, 2003." Plaintiff's objection is not well taken here because "[t]he opinions of the treating physicians did not conflict with [the consulting physician's] opinion. Therefore, the ALJ was not required to explain his reasons for rejecting a treating physician's opinion." *Roberson v. Apfel*, 1998 WL 203090, at *2 (10th Cir. 1998). *See also Martin v. Apfel*, 1999 WL 704286, at *1 (10th Cir. 1999) (finding "no conflict among the opinions" of the treating doctor and the consulting doctor); *Wolfe v. Shalala*, 997 F.2d 321, 326 (7th Cir. 1993) (same); *Perez v. Bowen*, 1986 WL 10289, at *4 (S.D.N.Y. 1986) (same).

Ultimately, plaintiff's objection does not controvert the analysis of the Magistrate Judge's Report and Recommendation, which listed several reasons why the KUMC treating physician's opinion was consistent with the consulting physician's opinion.

In sum, although the KUMC treating physician noted that plaintiff experienced lower back pain, he also noted that her pain was controlled by medication. In fact, plaintiff does not allege that any physician ever opined that her lower back pain was not controlled by medication. Therefore, the court agrees with the Magistrate Judge's conclusion that substantial evidence supports the ALJ's decision that despite plaintiff's lower back pain, she retained the residual functional capacity to perform a significant number of jobs. Thus, she was not disabled.

## CONCLUSION

For the reasons explained above, the court agrees with the Magistrate Judge's conclusion and, additionally, finds no merit to the two objections raised by Ms. Murphy. Therefore, the court will adopt the Report and Recommendation of the Magistrate Judge and, as a result, affirm the Commissioner's decision to deny benefits to Ms. Murphy.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the court adopts the Magistrate Judge's Report and Recommendation. Accordingly, the decision of the Commissioner to deny disability benefits to Ms. Murphy is affirmed.

**IT IS SO ORDERED.**

Dated this 25th day of July, 2006

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
